# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ELTON D. HARPER,**

      **Plaintiff,**

**v.**                                             **Civil Action No. 1:10cv32**
                                                    **(Judge Keeley)**

**ROBERT D. MALONE,**

      **Defendant.**

## AMENDED REPORT AND RECOMMENDATION[1]

### I. Factual and Procedural History

The plaintiff, a federal inmate, initiated this civil rights action on January 29, 2010. [Dckt. 1] In the complaint, the plaintiff asserts that the defendant violated his constitutional rights by using excessive force against him during an incident which occurred on December 24, 2008, at approximately 6:50 p.m. [Dckt. 6 at 2] In particular, the plaintiff asserts that the defendant, Robert D. Malone ("Malone" or "defendant Malone"), a corrections officer, approached his cell while yelling and cursing at him. Id. A heated argument ensued and defendant Malone allegedly grabbed the plaintiff's arm through the food slot on his cell door and began to yank, pull and bend the plaintiff's arm in an effort to break it. Id. at 3. The plaintiff alleges he suffered injuries as a result of the defendant's actions and that he is entitled to damages. Id.

After a preliminary review of the file, a summons was issued directing the defendant to file an answer to the plaintiff's complaint. [Dckt. 19 & 20] On August 2, 2010, the defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and a memorandum in support. [Dckt. 29, 30]

---

[1]The sole purpose of this Amended Report and Recommendation is to correct the name of the district judge to whom objections should be sent. See section IV. Recommendation. All other aspects of the report remain the same.

In the motion and memorandum, the defendant asserts that the plaintiff exposed himself to another correctional officer through the food slot on his door. [Dckt. 29 at 2] That officer reported the incident to defendant Malone. Id. Defendant Malone approached the plaintiff's cell to question him about this behavior. Id. When defendant Malone arrived at the plaintiff's cell door, the food slot was open and the plaintiff had his arm through the slot. Id. The plaintiff was questioned about his behavior and denied exposing himself to the other correctional officer. Id. When defendant Malone attempted to close and lock the plaintiff's food slot, the plaintiff "quickly swung his left arm out of the food slot and in Officer Malone's direction." Id. at 2-3. Defendant Malone reacted by stopping the plaintiff's arm and briefly holding the plaintiff's wrist. Id. at 3. Defendant Malone released the plaintiff's wrist and returned to his post. Id.

Two days later, the plaintiff reported to the medical unit. Id. At that time, his arm was red and swollen and had some decreased range of motion. Id. An investigation of the incident was later conducted. Id. The investigating officer, Lieutenant Grimm ("Lt. Grimm"), reviewed security footage which captured the incident between the plaintiff and Malone. Id. Lt. Grimm did not observe Malone pull, yank or bend the plaintiff's arm. Id. Moreover, he noted that Malone conducted himself in a calm manner and that the entire episode lasted only a few seconds. Id.

Because the plaintiff is proceeding without counsel, the Court issued a Roseboro Notice on August 4, 2010, advising the plaintiff of his right to file a response to the defendant's motion. [Dckt. 31] The plaintiff filed his response on September 1, 2010. [Dckt. 34]

In his response, the plaintiff asserts that defendant Malone approached his cell in a hostile manner. [Dckt. 34 at 6] Specifically, the plaintiff asserts that Malone was using profanity, making racial slurs and threatening the plaintiff with physical harm. Id. He further asserts that Malone "suddenly grabbed" his arm and started yanking and pulling it through the food slot, causing injury. Id. He also notes that he did not receive a written incident report for allegedly exposing himself to a correctional officer, nor any incident report for sticking a body part out through the food slot. Id.

2

at 7. Therefore, the plaintiff asserts that there is no corroborating evidence that either incident occurred. Id. Moreover, the plaintiff asserts that there are several irregularities with respect to Lt. Grimm's review of the video footage and that the review was not done in "good faith." Id. at 9-10. For these and other reasons, the plaintiff asserts that summary judgment is not appropriate. Id. at 12.

On September 14, 2010, the undersigned conducted a review of the pleadings and the parties competing affidavits and found several issues of material fact which could prohibit a grant of summary judgment. [Dckt. 35] The Court noted, however, that there was video footage of the incident that could resolve most, if not all of those issues. Id. The video footage was available, but for security reasons, had not been provided to the Court. Id. Nonetheless, because the undersigned found it necessary to review the video footage of the incident prior to making a recommendation on the defendant's pending motion, the defendant was directed to file the video footage under seal for an *in camera* review by the Court. Id. The sealed video footage was received on October 7, 2010 [Dckt. 40], and has been reviewed by the Court.

On October 18, 2010, the plaintiff filed a document titled "Submission of Evidence for In Camera Review to Amend." [Dckt. 42] In the document, the plaintiff requests the Court appoint an audio-video specialist to assist him in his defense. Id. at 1. In support of his motion, the plaintiff asserts that the declarations of defendant Malone and Lt. Grimm contradict one another, presumably rendering the video footage suspect. Id. at 2.

## II.  Standard of Review

### A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion

to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### III. Analysis

**A. The Plaintiff's Excessive Force Claim**

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). To comply with the Eighth Amendment, prison punishment must

5

comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. at 102. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312 , 321-22 (1986). In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d at 1262 (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) "the threat reasonably perceived by the responsible official;" and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams, 77 F. 3d at 762.

Furthermore, the standard in the Fourth Circuit used to be that, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force

claim if his injury is *de minimis*." Norman, 25 F.3d at 1263.[2] In other words, a *de minimis* injury reveals that *de minimis* force was used. Id. at 1262. However, earlier this year, the Supreme Court specifically overruled the Fourth Circuit's *de minimis* injury exception in Wilkins v. Gaddy, ___ U.S. ___, 130 S.Ct. 1175 (2010). In Wilkins, the Supreme Court specifically rejected Norman's finding that an excessive force claim may be dismissed solely on the basis of the *de minimis* nature of the resulting injury. Id. at 1177-78. Instead, the Supreme Court made it clear that the core judicial inquiry in an excessive force claim is not "whether a certain quantum of injury was sustained, but rather, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 1178 (quoting Hudson v. McMillen, 503 U.S. 1, 7 (1992) (internal quotations omitted)). In other words, "[w]here the force applied is excessive . . . , a constitutional claim may survive summary dismissal even if the resulting injury is *de minimis*." Hill v. O'Brien, 2010 WL 2748807 *1 (4th Cir. July 12, 2010) (citing Wilkins at 1180)).

Thus, although the extent of the plaintiff's injury is a factor to consider, it is not a threshold requirement for proving the plaintiff's Eighth Amendment claim in this case and the defendants are not entitled judgment as a matter of law based solely on the alleged *de minimis* nature of the plaintiff's injury. The Court must instead look at whether the force used in this case was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." See Hudson v. McMillen, 503 U.S. at 7.

Here, the parties' accounts of the December 24th incident are quite different. On one hand, the plaintiff contends that defendant Malone approached his cell in a hostile and aggressive manner, using profanity, yelling insults and making racial slurs.[3] He also contends that a "heated argument"

---

[2] In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face, and the keys hit his right thumb causing his right hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used.

[3] Name-calling alone cannot form the basis of a constitutional violation because a person has no liberty interest at stake. Numerous courts around the country have held that "even the most

ensued and Malone grabbed his arm and began yanking, pulling and bending his arm in an effort to break it. On the other hand, defendant Malone asserts that he approached the plaintiff's cell to question him about an earlier report that the plaintiff had exposed himself to another officer. When he reached the plaintiff's cell, he noticed the food slot was open and the plaintiff's arms were hanging out. Malone contends that he was not hostile or aggressive and that he conducted himself in a calm manner. However, when Malone attempted to close the plaintiff's food slot, the plaintiff swung his arm out in Malone's direction. Malone simply reacted to stop the plaintiff's arm and brief contact was made. Malone then returned to his post.

It is not disputed that the plaintiff reported to the medical department two days later. At that time, his arm was red and swollen and he had some decreased range of motion. Assuming that those injuries actually occurred as a result of the December 24th incident between the plaintiff and Malone, the plaintiff's injuries appear to be *de minimis*.

An investigation of the incident was later conducted by Lt. Grimm. As a part of that investigation, Lt. Grimm reviewed the video footage of the incident. In his affidavit, Lt. Grimm states that defendant Malone did not pull, yank or bend the plaintiff's arm. Moreover, he observed that defendant Malone acted in a calm manner and that the contact between the plaintiff and defendant Malone lasted no more than a few seconds.

The plaintiff contends that defendant Malone's declaration contradicts Lt. Grimm's declaration because Lt. Grimm states that when viewing the tape, he could see something laying on the top of the food slot when the female officer was picking up food trays, but that he could not identify the object. [Dckt. 34 at 9] In addition, the plaintiff asserts that Lt. Grimm "denounced"

---

abusive verbal attacks do not violate the constitution." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Likewise, racial epithets do not implicate constitutional rights because, "no matter how abhorrent or reprehensible" a racial epithet may be, it cannot itself form a basis for relief. See Wade v. Fisk, 176 A.D.2d 1087, 1089, 575 NYS.2d 394 (1991).

8

defendant Malone's guilt when he observed the defendant grab the plaintiff's arm. Id. Moreover, the plaintiff contends that Lt. Grimm's account of the video footage can not be trusted because he is a co-worker and acquaintance of the defendant. Id. The plaintiff further asserts that Lt. Grimm's observations are inconsistent with defendant Malone's account of the event and they indicate that physical contact was made. Id. at 10.

However, Lt. Grimm's observations and defendant Malone's account of the incident are neither contradictory nor inconsistent. First, defendant Malone was not present when the plaintiff allegedly exposed himself to the female correctional officer. That incident was merely reported to Malone, who then came to discuss the matter with the plaintiff. Thus, Malone's account of what happened prior to his going to speak with the plaintiff is merely what he was told by another officer. Lt. Grimm, on the other hand, states what he observed on the video footage. What he saw was some object on the food slot. Nonetheless, he could not, by way of the video tape, identify what the object was. There is nothing contradictory nor inconsistent between these two statements. Regardless, whether the plaintiff exposed himself to another corrections officer is merely incidental to whether defendant Malone used excessive force.

Second, Lt. Grimm does not "denounce" defendant Malone's guilt. He merely observes that the video footage shows some contact between the plaintiff and Malone. In point of fact, Lt. Grimm's observations support Malone's version of the incident. Lt. Grimm observes some brief contact between the plaintiff and Malone. According to Lt. Grimm, that contact lasts mere seconds and does not involve any yanking, pulling or bending of the plaintiff's arm.

Third, although it appears to be true that defendant Malone and Lt. Grimm are co-workers, and maybe even acquaintances, that fact alone is not enough for the court to conclude that Lt. Grimm's affidavit was made in bad faith. Lt. Grimm swore under penalty of perjury that the statements made in his declaration are true and correct to the best of his knowledge. [Dckt. 30, Ex. 2 at 4] The plaintiff does not allege that Lt. Grimm's statements are untrue, only that they are

suspect because they are inconsistent with defendant Malone's statements. As noted, however, that is simply not the case. Furthermore, the Court has reviewed the video footage of the alleged incident and finds that Lt. Grimm's observations are a true and accurate depiction of the events that occurred between the plaintiff and defendant Malone on December 24, 2008.

The video footage reveals that defendant Malone calmly walked up to the plaintiff's cell and bent over the plaintiff's food slot. [Dckt. 40] At that time, the food slot was open and the plaintiff's hands or arms appear to be hanging out. Id. Defendant Malone is not hostile, aggressive or otherwise agitated. Id. He does not appear to be yelling or screaming. Id. Instead, he calmly leans down and converses with the plaintiff. Id. At one point, there is brief contact made between the plaintiff defendant Malone. Id. That contact lasts only for a second or two, and does not involve any pulling, yanking or bending of the plaintiff's arm. Id. Defendant Malone then calmly walks away from the plaintiff's cell. Id. As he walks away, defendant Malone's face can clearly be seen by the camera. Id. The camera shows that his face is composed and he appears unruffled. Id. Moreover, his face is not red, he does not appear to be agitated, nor is there any other sign of the "heated" and hostile encounter that the plaintiff describes. Id.

Upon review of the video footage, it is very clear that no force was used during this incident, let alone excessive force. In fact, the plaintiff's version of the incident is perilously close to perjury.

Additionally, the Court notes that the fact that the plaintiff did not receive an incident report for his behavior is inapposite. Just because sanctions are available, does not mean that they must be imposed. Moreover, whether the plaintiff was sanctioned for allegedly exposing himself to a female officer or for having his hands out of the food slot is irrelevant to the excessive force inquiry.

**B.    The Plaintiff's Motion to Appoint an Audio-Video Specialist**

As grounds for this motion, the plaintiff asserts that the declarations of defendant Malone and Lt. Grimm are contradictory. Presumably, this fact somehow makes the video footage suspect. As noted above, however, the declarations of defendant Malone and Lt. Grimm are not

contradictory. Moreover, even if they were, such contradictory declarations are not grounds for appointing an audio-video specialist. The plaintiff has given no reason for the Court to doubt the authenticity of the video footage and the Court noticed no glitches, breaks or other irregularities which would lead it to believe that the video footage had been tampered with. Accordingly, the plaintiff's motion should be denied.

## IV. Recommendation

For the reasons stated, the undersigned recommends that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Dckt. 29] be **GRANTED**, the plaintiff's motion for an audio-visual specialist [Dckt. 42] be **DENIED** and this case be **DISMISSED with prejudice** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, and party may file written objections with the Clerk of Court. The written objections shall identify those portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: October 28, 2010.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE